UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

COMMUNITY ASSOCIATION UNDERWRITERS
 OF AMERICA, INC., a/s/o Woodbridge Park
 Homeowners Association Ltd.,

                              Plaintiff,
                v.

RAUSCHER HORTICULTURAL, LLC,

                              Defendant.
_____

DECISION
and
ORDER

20-CV-550F

**(consent)**

APPEARANCES:        RUPP PFALZGRAF, LLC
                         Attorneys for Plaintiff
                         JEFFREY F. BAASE, of Counsel
                         424 Main Street
                         Suite 1600
                         Buffalo, New York  14202

                         De LUCA LEVINE, LLC
                         Attorneys for Plaintiff
                         DANIEL J. de LUCA, of Counsel
                         301 E. Germantown Pike
                         3rd Floor
                         East Norriton, PA  19401

                         BURGIO, CURVIN & BANKER
                         Attorneys for Defendant
                         HILARY C. BANKER, of Counsel
                         496 Main Street
                         Buffalo, New York  14202

## **JURISDICTION**

On September 1, 2020, the parties to this action consented pursuant to 28 U.S.C. § 636(c)(1) to proceed before the undersigned. Dkt. 18. The matter is presently before the court on Defendant's motion for summary judgment (Dkt. 45), filed May 12, 2023.

## BACKGROUND

On May 8, 2020, Plaintiff Community Association Underwriters of America, Inc., ("Plaintiff" or "CUA"), a Delaware corporation, as subrogee of Woodbridge Park Homeowners Association Ltd. ("subrogor"), commenced this subrogation action seeking damages of $ 1 million for property damage arising from a June 8, 2019 fire allegedly caused by the negligence of Defendant Rauscher Horticultural, LLC ("Defendant"), at the subrogor's residential buildings.  Plaintiff asserts claims for negligence, breach of contract, and breach of implied warranties.  Defendant is a limited liability company organized and existing under the laws of the State of New York with its principal place of business in New York, does business under the name Serenity Landscapes ("Serenity"), and is owned by Joseph Rauscher ("Rauscher").

On May 12, 2023, Defendant filed the instant motion for summary judgment (Dkt. 45), attaching the Rule 56(a) Statement of Material Facts (Dkt. 45-1) ("Defendant's Statement of Facts"), and the Attorney Affirmation [of Hilary C. Banker, Esq.][1] (Dkt. 45-2) ("Banker Affirmation"), with exhibits A through N (Dkts. 45-3 through 45-16) ("Defendant's Exh(s). __").  On June 14, 2023, Plaintiff filed Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment (Dkt. 47) ("Plaintiff's Response"), attaching Plaintiff's Memorandum of Law in Support of Its Response in Opposition to Defendant's Motion for Summary Judgment (Dkt. 47) ("Plaintiff's Memorandum"), and Exhibits A through D (Dkts. 47-2 through 47-8) ("Plaintiff's Exh(s). __"), and a proposed order (Dkt. 47-9).  On June 28, 2023, Defendant filed in further support of summary judgment the Reply Memorandum (Dkt. 48) ("Defendant's Reply"),

---

[1] Unless otherwise indicated, bracketed material has been added.

attaching exhibits A and B (Dkts. 48-1 and 48-2) ("Defendant's Reply Exh(s). __").  Oral argument was deemed unnecessary.

Based on the following, Defendant's Motion is DENIED.

## **FACTS**[2]

Plaintiff Community Association Underwriters of America, Inc., ("Plaintiff") as Subrogee of Woodbridge Park Homeowners Association, Ltd. ("Subrogor" or "Woodbridge Park"), provided insurance to Subrogor in connection with properties located in Woodbridge Park in Orchard Park, New York.  Woodbridge Park consists of approximately 36 buildings each containing three to four two-story residential townhouse units ("townhouses") for a total of approximately 130 townhouses located along three roads including, as relevant here, Hastings Drive.  Defendant Rauscher Horticultural, LLC ("Defendant"), regularly engages in providing landscaping services and materials.  At issue in this action is whether a fire occurring on Saturday, June 8, 2019, at 30, 32, 34 and 36 Hastings Drive ("the fire"), causing extensive damage to 34 Hastings Drive ("the subject premises"), is attributable to Defendant's improper placement of mulch that spontaneously combusted.

Prior to June 8, 2019, Subrogor and Defendant entered into a contract ("Contract"),[3] pursuant to which Defendant was to provide Subrogor with landscaping services and materials for the "2019, 2020, 2021 Landscape Seasons."  Contract, Schedule A at 1 (Dkt. 45-9 at 3).  The contract required Defendant to, *inter alia*, "re-

---

[2] Taken from the pleadings and motion papers filed in this action.
[3] Although the copy of the Contract filed as Defendant's Exh. G (Dkt. 45-9) is both undated and unsigned, Plaintiff does not challenge its authenticity.

mulch" planting and tree beds[4] between April 1 and May 31 each year. *Id*. ¶ 5 (Dkt. 45-9 at 7). The contract also provided for new mulch to be applied "during the spring cleanup," with "approximately 130 yards of shredded mulch added to beds" to reach a maximum mulch depth of 3". *Id*. ¶ 5.1 (Dkt. 45-9 at 7). Defendant was required to perform the work in conformance with "all respects to the laws, rules and regulations, general and specific, of all governmental bodies and agencies which may be applicable to said work . . . ," Contract at 2 (Dkt. 45-9 at 2), and to indemnify the subrogor for any property damage and claims arising from Defendants' performance of work pursuant to the Contract. Contract, Schedule A at 5 (Dkt 45-9).

On June 8, 2019, at 3:09 P.M., one Jack Cutherbertson, who lived across the street from the subject premises, placed a telephone call to Town of Orchard Park Police Department ("Police Department") reporting a fire at 34 Hastings Drive. Town of Orchard Park Police Department Police Report ("Police Report"),[5] at 2-3. The Town of Orchard Park Fire Department ("Fire Department") responded to the fire, and the Police Department conducted a fire investigation. A short time later, Edward Dzioba ("Dzioba"), property manager for Woodbridge Park since 2001, received a telephone call from Woodbridge Park's then president Nancy Buck ("Buck") alerting Dzioba to the fire. Dzioba Dep. Tr.[6] at 7-12. Dzioba immediately went to Woodbridge Park and observed the front of the building containing townhouses at 30, 32, 34, and 36 Hastings Drive, engulfed in flames. *Id*. at 13. While at the scene of the fire, Dzioba spoke with

---

[4] The beds Defendant was hired to mulch were previously installed with mulch originally applied by another landscaper. *See* Dkt. 45-11 at 25.
[5] Filed as Plaintiff's Exh. D (Dkt. 47-8).
[6] References to "Dzioba Dep. Tr." are to pages of the transcript of Dzioba's May 25, 2021 deposition filed as Defendant's Exh. H (Dkt. 45-10).

4

several residents of neighboring properties, but the residents of 34 Hastings Drive, Lillian Yokley ("Lillian Yokley"), and her husband Bill Yokley ("Bill Yokley),[7] had left the subject premises the morning of the fire[8] to travel out-of-state, and were not contacted until 5:15 on June 8, 2019.  *Id*. at 19-20; EFI Report[9] (Dkt. 47-3) at 3.

Dzioba reported the fire to the John J. Grimaldi Agency through which Woodbridge Park obtained insurance.  Dzioba Dep. Tr. at 21.  One Salvatore Colangelo ("Colangelo"), an independent contractor with EFI Global, Inc. ("EFI""),[10] was sent by Defendant, *i.e.*, the insurance company, to investigate the fire.  *Id*.  Rauscher was not personally contacted by anyone associated with Woodbridge Park concerning the fire, and it was not until Wednesday, June 12, 2019, when a work crew was on site at Woodbridge Park that Rauscher learned Colangelo was investigating the fire for Plaintiff as well as whether the mulch could have produced heat and spontaneously combusted.  Rauscher Dep. Tr. [11] at 49-51, 60.  Rauscher testified that remulching at Woodbridge Park, where each townhouse had at least one small bed with several beds wrapping around each separate building, typically took four to six days each spring.  *Id*. at 30.  When remulching, the new mulch to be added to the beds was loaded into a truck trailer, and the assigned work crew would use shovels to move the mulch from the trailer to the bed being mulched, with the crew working one side of the street at a time, moving from one end of the street to the other before turning around and working back

---

[7] At various placed in the record, the surname "Yokley" is misspelled as "Yokey."  *See*, *e.g.*, Dkt. 47-3 at 3, 4.
[8] The record contains references to the Yokleys leaving the subject premises at 10:00 A.M., *see* Dkt.47-6 at 4, as well as at noon.  *See* Colangelo Dep. Tr. at 66; Dkt. 47-3 at 5.
[9] Filed as Exh. A to Plaintiff's Exh. A (Dkt. 47-3).
[10] Plaintiff retained Colangelo as a "fire-origin-and-cause expert."  Plaintiff's Memorandum at 5 (Dkt. 47 at 7).
[11] References to "Rauscher Dep. Tr." are to the pages of Rauscher's December 1, 2022 deposition testimony, filed as Defendant's Exh. I (Dkt. 45-11).

up the opposite side of the street until mulch was reapplied to all the beds at each property on the street. *Id*. at 31. All remulching at each address is completed in one day with no need to return to any address to complete remulching. *Id*.

Rauscher identified two invoices for mulch purchased from Woodbed Corp. ("Woodbed") in St. Mary's, Pennsylvania including one dated April 17, 2019, for premium black mulch, and the second dated April 29, 2019. Rauscher Dep. Tr. at 31-33, 36-38; *see* Defendant's Exh. K (Dkt. 45-13) (Invoice dated April 9, 2019 showing mulch was to be delivered April 17, 2019 to 80 Hastings Dr.). Woodbridge Park selected which mulch Defendant was to use for remulching the beds at Woodbridge Park. *Id*. at 34. Timesheets for Defendant show mulch was reapplied to the subject premises on April 17, 2019, Defendant's Exh. L at 1 (Dkt. 45-14 at 1); *see* Rauscher Dep. Tr. at 39-42, Dzioba Dep. Tr. at 36-37, and all remulching was completed at Woodbridge Park on May 1, 2019. Defendant's Exh. L at 3; Rauscher Dep. Tr. at 44-45, 62. Rauscher admits that prior to remulching the beds at Woodbridge Park in the spring of 2019, Rauscher was unaware that mulch can self-heat and spontaneously combust. *Id*. at 46-47.

When asked his opinion, albeit, non-expert, Dzioba doubted the fire was caused by the spontaneous combustion of mulch based on the fact that no fires occurred at any of the numerous other properties that Dzioba managed for 30 years, despite the use of black mulch. Dzioba Dep. Tr. at 50-51. After the fire, Rauscher continued to provide landscaping services at Woodbridge Park pursuant to the Contract, although no mulch was applied during 2020 or 2021 because of concerns the fire may have been caused by the mulch spontaneously combusting. Dzioba Dep. Tr. at 49-50, 54.

**DISCUSSION**

**1.      Summary Judgment**

Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003).  The court is required to construe the evidence in the light most favorable to the non-moving party.  *Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011).  The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment.  *Celotex*, 477 U.S. at 322; *see Anderson*, 477 U.S. at 247-48 ("summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").  "A fact is material if it 'might affect the outcome of the suit under governing law.'"  *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson*, 477 U.S. at 248).

"[T]he evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions."  *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988)).  A defendant is entitled to summary judgment where "'the plaintiff has failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on'" an essential element of a

7

claim on which the plaintiff bears the burden of proof.  *In re Omnicom Group, Inc., Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010) (quoting *Burke v. Jacoby*, 981 F.2d 1372, 1379 (2d Cir. 1992)).  Once a party moving for summary judgment has made a properly supported showing of the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor.  *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).  "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial."  *Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

In the instant case, Defendant's motion for summary judgment must be denied because although it is uncontroverted that the fire started at or near ground level near the left side of the front deck or porch of the subject premises, the cause of the fire, including spontaneous combustion, has not been conclusively established.  In particular, the reports prepared by expert witnesses for Plaintiff and Defendant show open issues of fact as to whether the fire was caused by spontaneous combustion, as well as unsettled questions of fact at to when the mulch was applied to the subject premises, and whether the fire may have been caused by smoking material coming into contact with the mulch.

Preliminarily, the court observes that Defendant's Motion focuses on eliminating spontaneous combustion of the newly applied mulch as the cause of the fire which would render moot the issue of Defendant's negligence, and does not address the breach of contract and breach of implied warranty claims.

**2.     Expert Witness Reports**[12]

    **A.     Plaintiff's Expert Witnesses' Reports**

Plaintiff retained as expert witnesses Colangelo who prepared the EFI Report and DeHong Kong, Ph.D., PE and CSP ("Dr. Kong"), a spontaneous combustion expert with a background in fire-and-explosion safety.

In a Fire Origin & Cause Report ("EFI Report")[13] dated September 25, 2020, and prepared by Colangelo for the Subrogor, Colangelo eliminated electrical wiring or arcing, as well as smoking as causes of the fire, but could not eliminate "spontaneous ignition of newly placed mulch," EFI Report at 5, originating in mulch located "just west of the front door" of the subject premises, *id*. at 4, noting "[e]xamination of the remaining mulch reveals a layer of mulch approximately 3-4 inches that had been accumulating over the years." *Id*. at 3.  According to the EFI Report, Rauscher reported placing mulch beginning six weeks prior to the fire, with the last mulch placed a few days before the fire, but that Rauscher "only tops off the mulch bed and has never had a problem with his mulch." *Id*. at 4.

The EFI Report indicates that Rauscher told Colangelo the last phase of mulch application was several days before the fire, EFI Report at 4, yet Colangelo's deposition testimony was that although Colangelo took notes of a conversation in which he engaged with Rauscher while investigating the fire, Colangelo never took a formal statement from Rauscher and relied on his notes when reporting Rauscher told Colangelo he completed the final mulching phase at the site a few days before the fire. Colangelo Dep. Tr. at 63-64.  Colangelo also testified his opinion that the fire was

---

[12] No challenges are raised to the qualifications of any of the expert witnesses retained by either party.
[13] Filed as Exh. A to Plaintiff's Exh. C (Dkt. 47-6).

caused by spontaneous ignition of newly applied mulch would not change if it were later determined the mulch was applied as early as April 17, 2019, *i.e.*, six weeks prior to the fire, Colangelo Dep. Tr. at 85, 105-06, but Colangelo admitted he was unable to provide any scientific basis for such opinion.  *Id*. at 85-86.

When pressed at his deposition, Colangelo opined that fresh mulch placed in the bed at the subject premises was the cause of the fire, Colangelo Dep. Tr. at 82-83, and that even if no mulch were applied after April 17, 2019, Colangelo's opinion would not change "[b]ecause it would take some time for the mulch to break down," *id*. at 85; see *id*. at 105-06, before denying that he was contending "that mulch applied April 17th could spontaneously combust on June 8th, 2019," *id*. at 85, because Colangelo "wouldn't have the scientific expertise to testify to something like that."  *Id*. at 85-86.  Nevertheless, Colangelo insisted the fired started in mulch located at ground level at the subject premises, either underneath or directly in front of the porch.  *Id*. at 93-95.  Colangelo further admitted he had no evidence that Rauscher applied fresh mulch at the subject premises days before the fire.  *Id*. at 96-97.

When interviewed by Colangelo, Bill Yokley[14] admitted being a smoker, but reportedly only smoked in the garage of the subject premises and placed all cigarette butts in a "cigarette can," *id*., and "[n]o evidence of any cigarette remains, or lighters were discovered in the search of the mulch or debris pile."  EFI Report at 4.  On the morning of the day of the fire, Bill and Lillian Yokley were picked up by their son, closing and locking the front door of the townhouse before entering their son's vehicle.[15]  *Id*.  At

---

[14] Colangelo does not specify when he interviewed Bill Yokley, who passed away without being deposed in connection with this action.  *See* Dzioba Dep. Tr. at 19 (testifying Bill Yokley "recently passed away").
[15] Colangelo states Bill Yokley reported exiting the townhouse through the garage door.  EFI Report at 4.

10

his deposition, however, Colangelo admitted the EFI Report does not unequivocally state the cause of the fire was spontaneous combustion, only that spontaneous could not be eliminated as the fire's cause, Colangelo Dep. Tr.[16] at 18, 37-38, but further testified that his conclusion based on his investigation would be that spontaneous ignition of newly placed mulch caused the fire, *id*. at 38-39, explaining the way he writes investigation reports is to eliminate causes, and any cause that cannot be eliminated is then considered the cause. *Id*. at 39-40.  Colangelo was "fifty-one percent" certain that spontaneous ignition of the mulch caused the fire. *Id*. at 40.  Colangelo described his investigation of the fire revealed it was a "ground up burn," and "[u]nderneath the boards of the porch it showed that the fire was underneath and it was traveling upward." Colangelo Dep. Tr. at 58.  Colangelo also testified that no evidence of cigarette remains were discovered in the search of the mulch and debris although the filter of a cigarette usually, but not always, survives a fire, nor would cigarette ashes be found after a fire. *Id*. at 60-61.[17]

Dr. Kong, whose was retained by Plaintiff as a spontaneous combustion expert, Plaintiff's Memorandum at 5 (Dkt. 47 at 7), prepared two reports including Evaluation of the Cause of the June 8, 2019 Fire in the House Complex on Hastings Drive (Dkt. 47-6) ("Dr. Kong's Primary Report"), and Response to the Report of Defendant Expert with Regard to the Role of Spontaneous Combustion as a Likely Ignition Source in the June 8, 2019 Fire in the House Complex on Hastings Drive (Dkt. 47-7) ("Dr. Kong's Rebuttal

---

[16] References to "Colangelo Dep. Tr." are to the pages of the September 16, 2021 deposition of Colangelo, filed as Plaintiff's Exh. B (Dkt. 47-4).
[17] There is no indication in the record as to whether Bill Yokley smoked filtered or non-filtered cigarettes, nor does the record indicate whether Yokley was smoking a cigarette as the Yokleys departed the townhouse because Yokley's passing, *see* Dzioba's Dep. Tr. at 19, prevented his deposition.

11

Report"). In Dr. Kong's Primary Report, Dr. Kong attributes the cause of the fire to spontaneous combustion resulting from a cycle of events whereby solar radiation increased the temperature of the mulch to a point that decomposition of the mulch was initiated, the decomposition of the mulch releases heat further raising the temperature of the mulch, thereby increasing the rate of decomposition (referred to as "thermal runaway"), which eventually caused the mulch to smolder and spontaneously combust. Dr. Kong's Primary Report at 5-6, 10. According to Dr. Kong, the weather conditions at the time of the fire, including warm, dry days from June 5 to 9, 2019, with temperatures in the low 80s° F, with little to no rain, clear skies, and nearing the summer solstice when the sun is higher in the sky, were conducive to self-heating and spontaneous combustion. *Id*. at 3-4, 7-8.

In rebuttal to the report prepared by Defendant's expert witness Dr. Rynk (Dkt. 45-15 at 13-25), Dr. Kong dismissed the theory that a cigarette could have ignited the fire based on a lack of evidence of any smoking materials at the premises, and the fact that New York law requires all cigarettes sold in New York state to be self-extinguishing.[18] Dr. Kong's Rebuttal Report at 5. Dr. Kong also emphasized that black mulch is more susceptible to spontaneous combustion because it retains more heat than any other color mulch, *id*. at 4-5, and that even mulch in shallow beds can spontaneously combust where there is little air flow to negate the effects of self-heating. *Id*. at 5-6.

At his deposition, Dr. Kong dismissed Serenity Landscapes' timesheet as establishing when the mulch was applied at the subject premises because the

---

[18] The court also notes the record fails to indicate whether Yokley's supply of cigarettes came from licensed cigarette retailers in New York or elsewhere.

12

timesheet does not separately list 34 Hastings as one of the premises where the mulch was deposited. Dr. Kong Dep. Tr.[19] at 16-18. Dr. Kong nevertheless agreed that April 17, 2019 was not "within a few days" of June 8, 2019, but maintains even if applied on April 17, 2019, the mulch constituted a "new mulch layer." *Id*. at 19-20. Despite relying on weather data showing the weather in Orchard Park for the week preceding the fire was warm and dry, Dr. Kong admitted he did not review any data regarding the weather on April 17, 2019, *id*. at 23, whether it rained after the application, *id*. at 23-24, or the depth of the beds after Defendant remulched them. *Id*. at 24-25. Nor was Dr. Kong certain whether the Yokley's left their home three or five hours before the fire on June 8, 2019. *Id*. at 27. Dr. Kong also admits that if the fire started under the front porch or deck of the subject premises, the sun would not have ignited the mulch. *Id*. at 28. Further, Dr. Kong's statement that "spontaneous combustion was the *likely* mechanism for the ignition of this fire," (Dkt. 47-7 at 5) (italics added), is equivocal.

Accordingly, Plaintiff's expert witnesses' report do not conclusively establish the fire was caused by spontaneous combustion in the mulch.

### B. Defendant's Expert Witnesses' Reports

In connection with this action, Defendant retained two expert witnesses including Robert Rynk, PE, Ph.D.[20] ("Dr. Rynk"), and Jenna Jagodzinski ("Jagodzinski"), fire and explosion consultant, certified fire protection specialist, and certified fire and explosion

---

[19] References to "Dr. Kong's Dep. Tr." are to the pages of the Dr. Kong's September 16, 2021 deposition filed as Defendant's Reply Exh. A (Dkt. 48-1).
[20] Dr. Rynk includes in his credentials research projects in heat recovery from composing and spontaneous combustion in bulk organic materials. Abbreviated Curriculum Vitae for Dr. Rynk, filed as Exhibit A to the Affidavit of Dr. Rynk, P.E., Ph.D. ("Dr. Rynk Affidavit"), filed as Defendant's Exh. B (Dkt. 45-15).

investigator.  Both Dr. Rynk and Jagodzinski provided expert witness reports in which they concluded spontaneous combustion was not likely the source of the fire.

Dr. Rynk's report addresses whether spontaneous combustion of wood mulch at the subject premises was a possible cause of the fire, as well as whether, if the fire was caused by spontaneous combustion, Defendant bears any responsibility for the fire.  Dr. Rynk's Report[21] at 1 (Dkt. 45-15 at 13).  In concluding that spontaneous combustion was not the cause of the fire, Dr. Rynk determined that spontaneous combustion is "a highly improbable occurrence" for which the conditions at the time of the fire were not conducive including that spontaneous combustion is nearly impossible in shallow layers of mulch measured in inches.  *Id*. at 8 (Dkt. 45-15 at 20).  Dr. Rynk also explains that spontaneous combustion occurs in conditions where there is an "internal generation of heat" attributed to "heat-releasing chemical reactions" resulting in a temperature high enough to cause a fire despite no external spark or heat source.  *Id*. at 6 (Dkt. 45-15 at 18).  Most organic materials, including mulch, gradually generate heat over a period of time, when living cells (parenchyma cells in wood), respire.  *Id*.  This "biological heating continues as microorganisms decompose the organic material and subsequently release heat."  *Id*.  Water is necessary for this "biologically-driven heating. . . ."  *Id*.  Solar heat is not spontaneous combustion, but "is merely a short-cut to elevated temperatures."  *Id*.  With such heating, however, temperatures rise "only if the rate of heat generation exceeds the rate of heat loss," *id*., but heat loss also increases as the temperature rises because of evaporation, convection and conduction, with evaporation dependent on the amount of moisture present.  *Id*. at 7 (Dkt. 45-15 at 19).

---

[21] Dr. Rynk's Report is attached as Exhibit B to Dr. Rynk Affidavit.

14

Dr. Rynk explains that the volume of material present is a significant factor in the generation of heat with the area of exposed surface largely responsible for the loss of heat. *Id*. Accordingly, a 20-foot high storage pile of mulch with a large volume and proportionally small surface area is likely to generate more heat than it loses and thus, more likely to spontaneously combust, whereas "small expansive bodies, like a bed of mulch in garden, are unlikely to reach critically high temperatures because the large surface area promotes rapid heat loss." *Id*. Dr. Rynk references as supporting field-based research a 2019 study performed by Southwest Research Institute ("SwRI") where shredded mulch was placed into a 2' X 2' x 2' cube ("the cube") and left exposed to exterior conditions in San Antonio which were much more severe than the conditions outside the subject premises on June 8, 2019. *Id*. at 9 (Dkt. 45-15 at 21). After six weeks, the maximum temperature inside the cube was at 113° F at its center, much too low to support spontaneous combustion. *Id*. Dr. Rynk further concluded that even if the fire was caused by spontaneous combustion, Defendant's application of the mulch did not constitute negligence because "widely accepted principles and practices in the landscaping industry do not consider spontaneous combustion to be a risk in garden-applied mulch," such that there was no reason for Defendant to consider mulch application to be a risk, nor is there any indication that Defendant followed anything other than accepted landscaping practices in applying the mulch. *Id*. at 12 (Dkt. 45-15 at 24).

Jagodzinski investigated the scene of the fire on June 18, 2019, reviewed physical documentation, scene photographs, the Police Report and the EFI Report along with several industry publications. Affidavit of Jenna Jagodzinski ("Jagodzinski

Affidavit")[22] ¶ 2.  Jagodzinski concluded within a reasonable degree of scientific certainty that the fire originated on the left side of the front porch at 34 Hastings Drive, but the cause was undetermined.  Jagodzinski Report[23] at 17 (Dkt. 45-16 at 29).  According to Jagodzinski, the conditions at the subject premises at the time of the fire, including a high temperature of 80° F, and partly to mostly cloudy, "will not support spontaneous heating in mulch spread out in a thin layer."  *Id*. at 13 (Dkt. 45-16 at 25).  Rather, "self-heating, but not thermal runaway may occur."  *Id*.  Put another way, "[t]he material will rise in temperature slightly above ambient, but the rise will not be sustained and eventually the temperature will start going down since reactants [chemicals in the mulch] will become depleted."  *Id*.  Jagodzinski eliminated electrical failure, spontaneous heating of mulch, lightning, and incendiary as the fire's cause, but could not eliminate improperly discarded smoking material as the cause based on Bill Yokley's self-reporting[24] he is a smoker who smoked only inside the garage.  *Id*. at 16 (Dkt. 45-16 at 29).  Jagodzinski continues that where all hypotheses are rejected, or if two or more hypotheses cannot be rejected, it is improper to opine as to a specific cause of a fire or its ignition.  *Id*.

Although Defendant's expert witnesses cast doubt on spontaneous combustion causing the fire, their reports do not establish the absence of a material issue of fact as to the fire's cause.  Simply put, a plain comparison of the reports prepared by Plaintiff's experts and Defendant's experts establish a lack of agreement, creating a material issue of fact, as to whether spontaneous combustion of the mulch applied to the bed at

---

[22] Defendant's Exh. N (Dkt. 45-16).
[23] The Jagodzinski Report is attached as Exhibit B to the Jagodzinski Affidavit.  Dkt 45-16 at 13-31.
[24] Bill Yokley was not deposed and has since expired.  Dzioba Dep. Tr. at 19.  The statements Jagodzinski attributes to Bill Yokley were taken from the EFI Report.  Jagodzinski Report at 2.

the front of the subject premises during the spring of 2019 caused the fire, a prerequisite to warrant consideration at trial of whether Defendant's placing of the mulch was negligent, or, although not addressed by Defendant's Motion, a breach of contract or warranty.

### 3.     Non-Expert Evidence

In addition to the contradicting conclusions in the expert reports, other evidence in the record also fails to conclusively establish the cause of the fire. Relevantly, although Plaintiff maintains the fire was caused by Defendants applying new premium black mulch at the subject premises during the days prior to June 8, 2019, when the weather was warm and dry with clear skies, and position of the sun caused the newly applied mulch to spontaneously combust, Defendant's timesheets indicate remulching was completed for the entire right side of Hastings Drive on April 17, 2019, Defendant's Exh. L (Dkt. 45-14), where it is undisputed the subject premises is located. Despite Colangelo's assertions that Rauscher stated the last mulch application at the subject premises was only a few days prior to the fire, EFI Report at 4; Colangelo Dep. Tr. at 85-86, Serenity Landscape's timesheet, which is admissible as evidence both pursuant to the hearsay exception for regularly conducted activity, Fed. R. Evid. 803(6), as well as an admission against interest pursuant to Fed. R. Evid. 804(b)(3)(A), indicates all mulching on the right side of Hastings Drive, the site of the subject premises, was completed on April 17, 2019. Defendant's Exh. L at 1 (Dkt. 45-14 at 1).

Nor is there any evidence in the record as to the weather when the mulch was applied or any scientific explanation as to the effect of the weather on the mulch other than in warm and dry conditions which, according to the expert reports, can impact the

amount of biological materials present to create the heating reaction necessary for spontaneous combustion to occur. Rauscher also maintains a stockpile of mulch at his home for use by Serenity Landscapes which produces no heat or vapors, Rauscher Dep. Tr. at 54, but has observed "cold morning vapor" emanating from a large pile of compost which is turned into mulch at another establishment located in Orchard Park. *Id*. at 55-56. Rauscher explains the vapor that emanates from the compost pile is caused by the fact that the compost pile is largely comprised of freshly ground tree chips in contrast to the mulch Defendant purchased from Wood Bed which is "aged" and has had more time to "break down" into inorganic elements than the fresher composted mulch. *Id*. at 57-58.

Relevantly, courts have denied summary judgment where the cause of a fire, including spontaneous combustion, cannot be established as a matter of fact. *See Royal Ins. Co. of Am. v. Long Beach Marineland*, 1988 WL 59635, at * 2 (S.D.N.Y. June 6, 1988) (determining on non-jury trial that the defendant's expert's speculation that the subject fire was caused by spontaneous combustion, in the absence of direct or circumstantial evidence supporting such theory, was mere speculation that was not anchored to any established fact in the record, in contrast to credible, circumstantial evidence that trespassers either purposefully or inadvertently started the fire, supporting denying liability based on spontaneous combustion in favor of judgment based on inadequate security measures). *Compare State Farm Fire & Cas. Co. v. Real Wood Fabricating, LLC*, 136 N.Y.S.3d 503, 505 (3d Dept. 2020) (denying summary judgment where genuine issues of fact existed as to whether the fire that originated in the left area of the garage was caused by spontaneous combustion of the presence of rags soaked

in stain or thinner used to refinish floors because although there was no dispute such materials were susceptible to spontaneous combustion, there were issues of fact as to the quantity of such materials as well as whether the rags were spread out to dry thus rendering them less likely to spontaneously combust).  *See, cf., Petition of Skibs A/S Jolund*, 250 F.2d 777, 787-88 (2d Cir. 1957) ("Failure to negative completely the possibility of spontaneous combustion" would not prevent recovery for nondelivery of cargo which burned in a fire if it is shown the fire was caused by some other negligent act in failing to protect the cargo).

Here, given the plethora of contradicting evidence, the court cannot find that spontaneous combustion is not the indisputable cause of the fire, thereby raising the issue of Defendant's negligence, as well as breach of contract and implied warranty. Accordingly, summary judgment must be DENIED.

## **CONCLUSION**

Based on the foregoing, Defendant's Motion (Dkt. 45) is DENIED.  The parties shall contact the court to set a trial date.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:   December 21, 2023
                Buffalo, New York